**HILLARD v. HILLARD**

[223 N.C. App. 20 (2012)]

CHARLES DANIEL HILLARD, Plaintiff v. THI DEN HILLARD, Defendant

No. COA12-353

(Filed 2 October 2012)

**1. Jurisdiction—subject matter—equitable distribution— consent order—plaintiff not precluded from challenging**

Plaintiff's consent to the terms of an amended equitable distribution consent order did not preclude him from challenging the validly of such order for lack of subject matter jurisdiction. A party cannot consent to subject matter jurisdiction and the issue of subject matter jurisdiction may be raised at any time.

**2. Jurisdiction—subject matter—equitable distribution— consent order—law not federally preempted**

The trial court did not lack subject matter jurisdiction to enter an amended equitable distribution consent order as this area of law was not federally preempted. Defendant neither directly nor indirectly sought to have the trial court treat plaintiff's disability benefits as divisible property.

**3. Divorce—equitable distribution—consent order—retirement pay—voluntary election—disability benefits**

Plaintiff remained financially responsible for compensating defendant in an amount equal to the share of retirement pay ordered as part of an equitable distribution consent order where plaintiff unilaterally made a voluntary election to waive retirement pay in favor of disability benefits.

Appeal by Charles Daniel Hillard from an order entered 9 December 2011 by Judge Marshall Bickett in Rowan County District Court. Heard in the Court of Appeals 29 August 2012.

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by James DeMay, attorney for plaintiff.*

*Milton Bays Shoaf, attorney for defendant.*

ELMORE, Judge.

## I. Background

Charles Daniel Hillard (plaintiff) commenced this action for divorce and equitable distribution against Thi Den Hillard (defend-

ant) on 24 August 1992. The parties' original order for equitable distribution (the order) was entered on 28 September 1994. The order provided that plaintiff's military retirement pay would be divided so as to award defendant one-half of plaintiff's retirement benefits that accumulated from the time of marriage to the date of separation. The order specified that the retirement pay was from the U.S. Army (1972-1977), with the National Guard (1979-1991), and with the Army Aviation Support Facility (11/1980-7/1991).

Defendant filed a Motion for Amendment of Judgment on 31 July 2008, and the order was amended by consent of the parties on 30 December 2008 (2008 amended order). The 2008 amended order was less specific in its language, providing only that defendant shall be entitled to 50% of plaintiff's military retirement points, which she may receive at the time plaintiff is entitled to receive such benefits.

Plaintiff turned sixty and became eligible to receive his military retirement pay. Thereafter, defendant applied for and was denied former spouse payments from the National Guard Pension Fund because the 2008 amended order failed to direct the National Guard Pension Fund to make a specific distribution to defendant.

In December 2002, Congress enacted 10 U.S.C. § 1413(a), which created Combat-Related Special Compensation (CRSC) as a tax-free disability benefit available to veterans who suffered a combat-related disability as a direct result of armed conflict, training exercises that simulate war, or instrumentalities of war. A CRSC-eligible veteran may elect to receive these tax-free disability benefits up to the amount of retirement pay that the veteran would otherwise receive. Plaintiff applied for and was granted CRSC disability benefits in the amount of $1,081.00 per month.

Defendant filed a second Motion for Amendment of Judgment on 30 July 2010, which came on for hearing on 10 November 2010. During the hearing or some point earlier, defendant learned that plaintiff had elected to receive CRSC disability benefits in lieu of retirement pay. As a result, the parties voluntarily entered into a second amended order on 13 December 2010 (2010 amended order). The 2010 amended order provided that plaintiff shall pay defendant directly 31.637% of plaintiff's monthly $1,081.00 payments that plaintiff would have received had plaintiff taken retirement pay instead of electing to take CRSC disability benefits. Plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure, which the trial court denied. Plaintiff now appeals.

## II. Plaintiff's Subject Matter Jurisdiction

Plaintiff first argues that his consent to the terms of the 2010 amended order does not preclude him from challenging the validly of such order for lack of subject matter jurisdiction. We agree.

A motion for relief pursuant to Rule 60(b) "is addressed to the sound discretion of the trial court and appellate review is limited to determining whether the court abused its discretion." *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E.2d 532, 541 (1975).

Under Rule 60(b)(4), a court may relieve a party from a judgment if the judgment is void. A judgment is void only when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered. *See In re Brown*, 23 N.C. App. 109, 208 S.E.2d 282 (1974). Additionally, it is widely accepted "that parties cannot, by consent, give a court, as such, jurisdiction over subject matter of which it would otherwise not have jurisdiction." *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956). Furthermore, when it appears that the court may lack jurisdiction, any person adversely affected may contest subject matter jurisdiction "at any time, even in the Supreme Court." *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85 (1986).

It is well settled that a party cannot consent to subject matter jurisdiction. Therefore, the fact that plaintiff agreed to the terms and entry of the 2010 amended order does not preclude him from raising the issue of subject matter jurisdiction on appeal. Plaintiff was not required to object to jurisdiction at the time the order was entered; it may be raised at any time.

## III. Trial Court's Subject Matter Jurisdiction

[2] As we have determined that plaintiff has not waived his right to contest subject matter jurisdiction, we will now address plaintiff's contention that the trial court lacked the subject matter jurisdiction to enter the 2010 amended consent order because this area of law is federally preempted. We disagree.

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

Plaintiff contends that because military disability benefits, including CRSC, are not included within the definition of "disposable

retired or retainer pay" under USFSPA, these payments cannot be classified as marital property subject to distribution. *See Halstead v. Halstead,* 164 N.C. App. 543, 546, 596 S.E.2d 353, 355 (2004).

Plaintiff directs our attention to *Halstead,* where this Court reversed the trial court's decision to increase the percentage of the husband's retirement payable to the wife in order to account for the deduction in retirement pay as a result of the husband's election to receive disability benefits. *See Id.* at 543, 596 S.E.2d 353. Here, this Court found that "[d]isability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage." *Id.* at 547, 596 S.E.2d at 356. In *Halstead* the trial court did not direct the husband to pay the increase from his disability benefits. Similarly, the trial court in the case at hand did not direct plaintiff to pay defendant specifically from his CRSC disability pay. However, plaintiff argues that, regardless of whether the amended order specifies that plaintiff must pay defendant directly from his CRSC benefits, the result is the same—plaintiff ends up paying defendant a portion of his retirement that was waived due to his election to receive disability benefits, which is what *Halstead* forbid.

Plaintiff is correct in noting that federal law continues to preempt state law with regard to all military payments except "disposable retired or retainer pay" and that disability payments are treated as the retiree's separate property. *See* N.C. Gen. Stat. § 50-20(b)(1) (2012). However, disability payments may be treated as a distributional factor in a property settlement. *Bishop v. Bishop,* 113 N.C. App. 725, 734, 440 S.E.2d 591, 597 (1994); N.C. Gen. Stat. § 50-20(c)(1); *see also Clauson v. Clauson,* 831 P.2d 1257, 1263 (Alaska 1992). Furthermore, domestic relations are "preeminently matters of state law," and Congress "rarely intends to displace state authority in this area." *White v. White,* 152 N.C. App. 588, 593, 568 S.E.2d 283, 285 (2002) (citations and quotations omitted). Therefore, federal preemption in domestic relations law is only found in the rare instances where Congress has "positively required by direct enactment" that state law be preempted. *Id.*

Here, plaintiff's argument is misguided. The 2010 amended order in relevant part states

> 2. Plaintiff elected to take a portion of his military retirement as disability rather than retirement, which is *not divisible* to a former spouse. Therefore, no qualified domestic relations order is necessary. (emphasis added)

3. Beginning December 1, 2010, plaintiff will pay directly to defend-
ant the portion of his retirement required by the previous order.

Defendant neither directly nor indirectly sought to have the trial
court treat plaintiff's disability benefits as divisible property. In fact,
the 2010 amended order specifically states that "[p]laintiff elected to
take a portion of his military retirement as disability rather than
retirement, which *is not divisible to a former spouse*[.]" (emphasis
added). Defendant sought only to have the trial court amend the 2008
consent order to protect her interest in the retirement benefits that
she was awarded in the original 1994 order. The 2010 amended order
neither required plaintiff to compensate defendant from his disability
pay nor did it classify the disability pay as marital property.

The case at hand is analogous to *White v. White, supra*. In *White*,
this Court reversed a district court's determination that it lacked
authority to amend a qualifying order to increase a former spouse's
share of a military spouse's retirement pay to reflect a waiver of
retirement pay in favor of disability benefits. *Id.* at 594, 568 S.E.2d at
286. This Court saw no reason why the trial court lacked authority to
consider the defendant's request for modification of the order. *Id.* at
593, 568 S.E.2d 286.

In light of *White*, we conclude that the trial court had authority to
modify the terms of the 2010 amended order. Accordingly, we affirm.

### IV. Application of *McGee v. Carmine*

[3] Beyond deciding the jurisdictional issues presented by plaintiff,
this Court will delve into the crux of the argument a bit further. While
we have never directly considered whether a military spouse remains
financially responsible for compensating his or her former spouse in
an amount equal to the share of retirement pay ordered as part of a
property division pursuant to a divorce judgment when a military
spouse makes a voluntary post-judgment election to waive retirement
pay in favor of disability benefits, the Michigan Court of Appeals has
done so in *McGee v. Carmine*, 290 Mich. App. 551, 802 N.W. 2d 669
(2010). In *McGee*, the defendant was awarded 50% of the plaintiff's
Navy disposable retirement pay as part of the property division pur-
suant to a divorce judgment incorporated by a qualified domestic rela-
tions order (QDRO). 290 Mich. App. at 553, 802 N.W. 2d at 670.
Thereafter, the plaintiff elected to take CRSC disability benefits,
which ended the plaintiff's receipt of retirement pay and terminated
the defendant's right to payment as well. *Id.* at 553, 802 N.W. 2d at 671.
The defendant moved to enforce the divorce judgment and the QDRO.

The Michigan Court of Appeals held that a military spouse remains financially responsible to compensate the former spouse

> in an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of the divorce judgment's property division when the military spouse makes a unilateral and voluntary post-judgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment.

*Id.* at 553-54, 802 N.W. 2d at 671.

The Michigan Court of Appeals also concluded that a state court neither has authority to divide a military spouse's CRSC disability benefits, nor can a military spouse be ordered by a court to pay the former spouse directly out of CRSC disability funds. *Id.* The court held that compensation "can come from any source the military spouse chooses," including CRSC funds if desired. *Id.*

In the case at hand, plaintiff unilaterally elected to take part of his retirement pay as CRSC disability benefits. The 2010 amended order merely required plaintiff to compensate his former spouse according to the agreed terms in the previous consent orders and it did not specify the requisite source of payment. We find *McGee* to be persuasive authority and, in following *McGee,* we also conclude that plaintiff must compensate defendant according to the terms of the 2010 amended consent order; however, the funds may come from any source that plaintiff so chooses.

## V. Conclusion

Plaintiff had proper jurisdiction to contest the trial court's subject matter jurisdiction. Additionally, the trial court had proper authority to enter the 2010 amended order. Plaintiff must abide by the terms of the 2010 amended order and compensate defendant according to the specified terms. Based on the foregoing, the orders of the trial court are affirmed.

Affirmed.

Judges CALABRIA and STEPHENS concur.