709 S.E.2d 679

**Sheri Denise BROWN, Appellant,**

v.

**Phillip Ray BROWN, Respondent.**

**No. 4814.**

Court of Appeals of South Carolina.

Heard Feb. 9, 2011.

Decided March 30, 2011.

Cynthia Barrier Patterson, of Columbia, and Stephen Gordon Dey, of Charleston, for Appellant.

Joseph Francis Runey, of Charleston, for Respondent.

PER CURIAM.

Sheri Denise Brown (Wife) and Phillip Ray Brown (Husband) were divorced in 2006. Wife appeals the family court's 2008 post-divorce order establishing terms for the sale of the marital home, arguing the family court erred in (1) assuming jurisdiction over matters previously reserved to another judge; (2) clarifying the divorce decree in general; (3) clarifying the divorce decree although its terms were clear; (4) clarifying the divorce decree under Rule 60(a), SCRCP; (5) establishing a pricing scheme and requiring automatic reductions in the selling price of the marital home; and (6) awarding Husband a "monetary judgment" with post-judgment interest. We reverse the family court's imposition of post-judgment interest, remand for continued supervision of the home sale, and affirm as to the remaining issues.

## FACTS

On June 9, 2006, Judge Jocelyn B. Cate entered an order granting Wife a divorce from Husband. This order incorporated the parties' agreements on the issues of custody and visitation and decided the remaining contested issues by equitably dividing marital property, awarding alimony and child support, and ordering Husband to pay a portion of Wife's attorney's fees.

With respect to the home the parties shared, the family court found that although Wife owned it prior to the marriage, the parties transmuted it into marital property. Consequently, the family court determined Husband owned a share of the equity in the home. In its order, the family court recited that Wife submitted an appraisal valuing the home at $225,300 and seven months later, Husband submitted another appraisal valuing the home at $250,000. Subtracting the outstanding $38,000 mortgage from the lower appraised value, the family court valued the marital home at $187,300. In distributing the marital property, the family court stated:

[Wife] should be given the option of purchasing [Husband]'s remaining equity in the amount of $60,191.02 either by refinancing the marital residence, taking out an equity line, or by other independent means within ninety (90) days from the date of the entry of this Final Order. If she is unwilling or unable to buy out [Husband]'s equitable share, the marital residence shall be placed on the market with an agreed upon realtor for the sale price of at least $225,300[.] [Wife] will continue to remain in the home until it is sold and be responsible for all expenses associated therewith. Once it is sold, the parties shall divide the net proceeds so that [Husband] receives 32.14% of the net proceeds but shall not exceed $60,191.02[.]

The order was silent as to how the parties should proceed if the home were placed on the market but did not sell.

Post-divorce relations between the parties were acrimonious. In October 2006, Husband filed a rule to show cause against Wife for various reasons, including her refusal to allow Husband's input into the selection of a realtor or determination of a listing price for the marital home. In December 2006, Wife filed a rule to show cause against Husband for several reasons, including his failure to cooperate with the realtor listing the marital home for sale.

On April 18, 2007, the parties tried their respective rules to show cause before Judge Frances P. Segars–Andrews. Following the presentation of evidence, the parties submitted an agreement in which they fully settled the issues pertaining to the rules to show cause. The resulting order of the family court recited and approved this agreement. With regard to the marital home, the family court agreed to select a realtor to list and sell the home. Furthermore, according to the agreement:

The listing Agent shall have the authority to determine the listing price, provided however, the house shall be sold at the highest and best price attainable ... and upon the best terms attainable under current market conditions in a timely fashion and as soon as practicable.... If the house is not sold or under contract within [a] ninety (90) day period, the parties may agree to continue with said agent, may mutually agree on an alternative agent or if they are unable to agree,

may return to this Court for further Order in connection with the sale of the family residence.

Judge Segars–Andrews selected a realtor who listed the home for sale, and Wife executed a listing agreement setting the sale price at $274,000. The home did not sell.

In January 2008, some nine months later, Husband filed a motion for relief seeking an order requiring Wife to purchase his equity in the marital home, refinance the home or reduce its selling price, pay him post-judgment interest on the amount of his equity in the home, and pay his attorney's fees related to the motion. Following a hearing, Judge Cate entered an order purportedly clarifying the divorce decree to award Husband post-judgment interest at 11.25% per annum on the amount of his equity in the marital home, renewing the requirement that the home be listed for sale and establishing a plan for determining the listing price, and denying attorney's fees to either party. Judge Cate based her decision to award Husband post-judgment interest on the court's authority to correct clerical errors under Rule 60(a), SCRCP, and upon a finding the terms of the divorce decree addressing Husband's equity in the marital home were ambiguous and required further construction. Judge Cate imposed new requirements for sale of the home pursuant to the contempt order entered by Judge Segars–Andrews. Specifically, she ordered both parties to enter a six-month listing agreement with a realtor of the family court's selection, set the home's initial listing price at $255,550, and required the listing price to be reduced by five percent every sixty-day period the home remained unsold. She further required the parties to accept an offer within three percent of the listing price of the property at the time of the offer and authorized both Husband and Wife to receive "any and all information pertaining to the marketing of the home and potential buyers."

Wife moved for reconsideration, arguing all the issues she now raises on appeal except jurisdiction. The family court summarily denied her motion. This appeal followed.

## STANDARD OF REVIEW

Matters concerning interpretation and enforcement of the family court's orders are within the family court's

discretion. *Arnal v. Fraser*, 371 S.C. 512, 520, 641 S.E.2d 419, 423 (2007). An abuse of discretion occurs when the conclusions of the family court either lack evidentiary support or are controlled by an error of law. *Bryson v. Bryson*, 347 S.C. 221, 224, 553 S.E.2d 493, 495 (Ct.App.2001). When reviewing a decision by the family court, the appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Ex parte Morris*, 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006). This broad scope of review does not require the appellate court to disregard the findings of the family court. *Id.* at 61–62, 624 S.E.2d at 652.

## LAW/ANALYSIS

### I. Jurisdiction

Wife first argues Judge Cate erred in ruling on Husband's motion for relief because Judge Segars–Andrews had specifically reserved jurisdiction over matters dealing with the sale of the house. We decline to address this issue as unpreserved. An issue not raised to the family court is not preserved for appellate review. *Chastain v. Chastain*, 381 S.C. 295, 306, 672 S.E.2d 108, 114 (Ct.App.2009). Wife did not raise this issue prior to or during the hearing on Husband's motion for relief, nor did she raise it in her motion to reconsider. Furthermore, Wife does not argue on appeal that this issue implicates subject matter jurisdiction.[1] Consequently, this issue is not properly before this court.

### II. Rule 60(a), SCRCP

Next, Wife asserts the family court erred in clarifying the divorce decree under Rule 60(a), SCRCP. We agree.

---

1. This issue concerns jurisdiction, generally, which is bound by preservation rules, and not subject matter jurisdiction, which may be raised at any time. Subject matter jurisdiction refers to the court's "power to hear and determine cases of the general class to which the proceedings in question belong." *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994). "Numerous cases have held that subject matter jurisdiction is not implicated when the court possesses the power to hear and determine cases of the general class to which the proceedings in question belong." *Gainey v. Gainey*, 382 S.C. 414, 424, 675 S.E.2d 792, 797 (Ct.App.2009).

■ "The [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal." S.C.Code Ann. § 20–3–620(C) (Supp.2010). However, an order of the family court may be modified if "jurisdiction was specifically reserved in the decree or if allowed by statute." *Hayes v. Hayes,* 312 S.C. 141, 144, 439 S.E.2d 305, 307 (Ct.App.1993). In addition, Rule 60(a), SCRCP, permits trial courts to correct clerical errors at any time:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, leave to correct the mistake must be obtained from the appellate court. The ending of a term of court or departure from the circuit shall not operate to deprive the trial judge of jurisdiction to correct such mistakes. A party filing a written motion under this rule shall provide a copy of the motion to the judge within ten (10) days after the filing of the motion.

■ The family court's correction of clerical errors may not extend to "chang[ing] the scope of the judgment." *Michel v. Michel,* 289 S.C. 187, 190, 345 S.E.2d 730, 732 (Ct.App.1986). "Except for those matters over which a court retains continuing jurisdiction, terms of a final property settlement agreement, once approved, are binding on the parties and the court." *Price v. Price,* 325 S.C. 379, 382, 480 S.E.2d 92, 93 (Ct.App.1996); *accord Doran v. Doran,* 288 S.C. 477, 478, 343 S.E.2d 618, 619 (1986) ("A trial judge loses jurisdiction to modify an order after the term at which it is issued, except for the correction of clerical [errors]. Once the term ends, the order is no longer subject to any amendment or modification which involves the exercise of judgment or discretion on the merits of the action.").

We reverse the family court's determination that Rule 60(a), SCRCP, authorized "clarification" of the divorce decree to reclassify Husband's equitable share of the marital home as an interest-accruing money judgment. Judge Cate's clarification did not amount to correction of a clerical error such as a misspelling, a misplaced decimal, or a miscalculation. Instead,

it recharacterized a portion of Husband's award and imposed additional terms upon the parties that did not exist at the time the divorce decree was entered. Under the divorce decree, Wife's pre-sale purchase of Husband's equity in the home was optional. In the event Wife did not exercise this option, both the amount and timing of Husband's recovery of this equity were contingent upon the sale of the home. In short, both the date Husband's equitable share was due and the amount he would receive, up to $60,191.02, remained undetermined and contingent upon the sale of the home.

Judge Cate's April 2008 order significantly changed these terms, thereby altering the substance and scope of the judgment. *See Michel*, 289 S.C. at 190, 345 S.E.2d at 732 (excluding from Rule 60(a) coverage changes that affect "the scope of the judgment"). Instead of Husband receiving 32.14% of the home's sale value not to exceed $60,191.02, the April 2008 order establishes a sum certain of $60,191.02. Instead of Husband receiving his payment upon sale of the marital home, the April 2008 order made payment to Husband due as of June 9, 2006, with interest accruing thereafter. Because Judge Cate's ruling modified the substance of the judgment reflected in the divorce decree, the family court erred in finding Rule 60(a) authorized its modifications.

## III. Pricing Scheme for Marital Home

Additionally, Wife argues the family court erred in clarifying the divorce decree to require automatic reductions in the selling price of the marital home. We disagree.

The family court should attempt to end the controversy between the parties by finally severing all entangling legal relationships and placing the parties in a position to begin anew. *Roe v. Roe*, 311 S.C. 471, 482 n. 7, 429 S.E.2d 830, 837 n. 7 (Ct.App.1993). In equitably apportioning marital property, the family court "may order the public or private sale of all or any portion of the marital property *upon terms it determines.*" S.C.Code Ann. § 20–3–660(A) (Supp.2010) (emphasis added). Furthermore, the family court is authorized to construe and enforce contracts relating to property involved in a divorce action. S.C.Code Ann. § 20–3–690 (Supp.2010). "A court approved divorce settlement must be viewed in accor-

dance with principles of equity and there is implied in every such agreement a requirement of reasonableness." *Ebert v. Ebert*, 320 S.C. 331, 340, 465 S.E.2d 121, 126 (Ct.App.1995). When the terms of an agreement omit a necessary provision such as the time for performance, a court will imply a reasonable term. *Id.*

We affirm the family court's requirement that the parties sell the home and adhere to a predetermined pricing scheme. Contrary to Wife's argument, establishing the terms of the sale is well within the family court's statutory authority. *See* § 20–3–660(A) (authorizing the family court to establish terms for the sale of marital property). In this case, Judge Cate's order establishing a pricing scheme for the marital home merely enforced the terms of both the divorce decree and the parties' prior agreement reflected in the order entered by Judge Segars–Andrews. In that agreement, the parties concurred that "the house shall be sold at the highest and best price attainable ... and upon the best terms attainable under current market conditions in a timely fashion and as soon as practicable." In the event the house failed to sell and they differed on how to proceed, the parties agreed to seek further guidance from the family court. Husband sought that guidance, and Judge Cate provided it. The pricing scheme Judge Cate established did not conflict with the minimum listing price of $225,300 set by the divorce decree [2] and complied with the goals set out in the parties' subsequent agreement. In light of Wife's failed attempt to sell the home for $274,000, a lower initial listing price with small periodic reductions is a reasonable approach to severing this remaining tie between Husband and Wife. Accordingly, the family court did not err.

To the extent Wife requests "reimbursement for maintaining the marital property," this issue is unpreserved because she failed to raise it to the family court. *See Chastain*, 381 S.C. at 306, 672 S.E.2d at 114 (holding an issue not raised to the family court is not preserved for appellate review).

---

2. Under Judge Cate's pricing scheme, the listing price would be reduced by five percent every sixty days the home remained unsold. With an initial listing price of $255,550, if the home did not sell before the end of the six-month agreement, it would undergo two such price reductions, resulting in a final listing price of $230,634.

## IV. Remaining Issues

Wife further argues the family court erred in clarifying the divorce decree because neither party requested such clarification and because the language of the decree was clear and unambiguous. We decline to address these issues because Wife failed to support her arguments with legal authority. *See Eaddy v. Smurfit–Stone Container Corp.*, 355 S.C. 154, 164, 584 S.E.2d 390, 396 (Ct.App.2003) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not preserved for our review.").

Finally, Wife argues the family court erred in clarifying the divorce decree to award a "monetary judgment" entitling Husband to post-judgment interest. Our reversal of the family court's decision on the basis of Rule 60(a), SCRCP, renders consideration of this issue unnecessary. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We find the family court's reclassification of Husband's equity in the marital home as a monetary judgment and the attendant imposition thereon of post-judgment interest did not constitute the correction of a clerical error under Rule 60(a), SCRCP. Accordingly, we reverse the family court's purported clarification of the divorce decree as it relates to the monetary judgment and the imposition of post-judgment interest.

We find Judge Cate's instructions for selling the marital home were within the family court's discretion and are reasonable. Therefore, we remand this matter to the family court for continued supervision of the sale of the marital home.

We do not reach Wife's remaining issues. We find the issue of Judge Segars–Andrews's reservation of jurisdiction is unpreserved because it was neither raised to nor ruled upon by the family court. We further find Wife abandoned her remaining issues on appeal by failing to cite to relevant legal authority in her brief.

626

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

FEW, C.J., KONDUROS, J., and CURETON, A.J., concur.